**MELRIDGE, INC., a Washington corporation, Plaintiff,**

v.

**George R. HEUBLEIN, Gordon H. Flattum, Gary M. Wood, Thomas E. Thornton, and Kelle G. Heublein, Defendants.**

**In re MELRIDGE, INC., a Washington corporation, Debtor.**

Civ. No. 88–146–JU.
Bankruptcy No. 387–06589–P11.
Adv. No. 87–0721.

United States District Court,
D. Oregon.

April 2, 1991.

Edwin Perry, William Martson, Tonkin, Torp, Galen, Marmaduke & Booth, Portland, Or., for Melridge, Inc.

William Dickas, Kell, Alterman & Runstein, Portland, Or., for George R. Heublein.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FRYE, District Judge.

## INTRODUCTION

This matter came before the court for hearing on January 14 and 15, 1991 on an order to show cause why defendant George R. Heublein should not be held in contempt for violating temporary restraining orders entered by the United States Bankruptcy Court on December 14, 1987 and December 30, 1987. The order of December 14, 1987 provides:

> IT IS HEREBY ORDERED that defendant George R. Heublein, his agents, servants, employees, attorneys and those persons in active concert or participation with him, are prohibited from encumbering, selling, removing, transferring, or otherwise disposing of any property in which defendant George R. Heublein has an interest, either directly, indirectly or in common or jointly with others, pending further order of this Court.

## FACTS

At the time the temporary restraining order was entered, Heublein controlled a bank account maintained in the name of "Lipworth Investments Inc.," Account No. 280–241, at the Algemene Bank Nederland (ABN) in Zurich, Switzerland. Heublein's ownership of, interest in, and control of this account is established by the following facts:

1. The Lipworth Investments Inc. account contained, among other assets, seven negotiable securities which had been held in earlier bank accounts maintained in Heublein's name at the same bank, Account No. 9366 (code name "Jennifer Lynn Gertrude"), and Account No. 12067 (code name "Haley"). *See* Exhibit 3, Document Nos. 140111–12 (Jennifer Lynn Gertrude), 140083–84 (Haley), and 140054 (Lipworth Investments Inc.). These securities had been transferred from the Jennifer Lynn Gertrude account into the Haley account just before the Jennifer Lynn Gertrude account was closed and just after the Haley account was opened. These securities were later transferred from the Haley account into the Lipworth Investments Inc. account just after it was opened and just before the Haley account was closed and just after the Lipworth Investments Inc. account was opened. The Lipworth Investments Inc. account was opened on Novem-

ber 27, 1987. The Haley account was closed on December 2, 1987.

The seven specific negotiable securities and their specific serial numbers are listed below:

(1) 11% Australia 1985–95 (# 06386590);
(2) 12.5% Finnland 1984–94 (# 04720810);
(3) 11.375% Ford Motor Credit Co. 1985–90 (# 08760450);
(4) 11% Inter–American Development Bank 1983–92 (# 08798200);
(5) 14% New Foundland, Province of 1984–91 (# 06686780);
(6) 13.625% Oesterreich 1984–92 (# 04237230);
(7) 11.875% Prudential Realty Sec. III Inc. 1985–92 (# 08955850).

These seven negotiable securities were found in each of the three ABN accounts. The records of the Jennifer Lynn Gertrude account reflect the original purchase of these securities from the transferred proceeds of Heublein's sales of Melridge, Inc. (Melridge) stock. For example, Document No. 140148 in Exhibit 3 reflects receipt into the Jennifer Lynn Gertrude account in June of 1985 of approximately $1.3 million from the Seattle branch of the ABN. The same document reflects the almost immediate use of that cash to invest in negotiable securities.

Seven of the same negotiable securities purchased through the Jennifer Lynn Gertrude account and held in that account in Heublein's name were later transferred into the Haley account, and were subsequently listed in the Lipworth Investments Inc. account. *See* Exhibit 3, Document Nos. 140111–12 (Jennifer Lynn Gertrude account), 140083–84 (Haley account), and 140054 (Lipworth Investments Inc. account). There can be no doubt but that these are the same negotiable securities because the serial numbers for these securities are the same serial numbers for the securities in the three different accounts.

Heublein's signature appears on two cash disbursements in the sum of $55,000 drawn from the Lipworth Investments Inc. account on January 29, 1988 and February 9, 1988. *See* Exhibit 3, Document Nos. 140037, 140038, and Exhibits 5 and 6.

The address for Lipworth Investments Inc. is given as "c/o Cervin Trust Company" on the signature card for the Lipworth Investments Inc. account. *See* Exhibit 3, Document No. 140047. Hotel records compiled by Zurich police show that Heublein telephoned the Cervin Trust Company on February 9, 1988, the same day that he made a cash withdrawal of $20,000 from the Lipworth Investments Inc. account. *See* Exhibit 3, Document Nos. 104416, and translation in Exhibit 4; compare Exhibit 3, Document No. 140037.

The Zurich police reported that, when the Lipworth Investments Inc. account was closed on March 1, 1988, the cash proceeds of $1,787,802 were disbursed to Heublein and another individual. *See* Exhibit 3, Document No. 140012, and translation in Exhibit 4.

The court finds that the facts establish, by clear and convincing evidence, that Heublein controlled the Lipworth Investments Inc. account.

## HEUBLEIN'S OBJECTIONS

Heublein contends that the Swiss bank records pertaining to the first two accounts, Jennifer Lynn Gertrude and Haley, are not relevant to the instant proceeding because the transactions took place prior to the time the court entered the orders; that he could have used the approximately $55,000 he allegedly withdrew in cash from the Lipworth Investments Inc. account for legal fees or living expenses, which were permitted to some extent under the terms of the temporary restraining orders; and that there is no clear and convincing evidence that Heublein actually received the $1.7 million in cash ultimately withdrawn from the Lipworth Investments Inc. account on or about March 1, 1988.

Heublein contends that the documents obtained under the Treaty on Mutual Assistance in Criminal Matters between the United States and Switzerland may not be used in this civil contempt proceeding. Melridge argues that the use of the documents in this proceeding is permissible,

and Heublein lacks standing to assert the provisions of the Treaty.

Heublein challenges the admissibility of the Swiss police reports and bank records on the grounds of lack of authentication. Melridge contends that the documents were properly authenticated under the provisions of the Federal Rules of Evidence, and thus were properly admitted in the contempt hearing. Melridge further contends that the Swiss police reports and bank records have extremely high indicia of reliability which would justify their admission into evidence despite any technical evidentiary problems. Melridge points out that Heublein has had copies of the documents in question in his possession for over six months and has not introduced any evidence challenging their genuineness or accuracy.

Heublein contends that the Swiss police reports and bank records are inadmissible hearsay. In particular, Heublein argues that a reference to an interview with the director of the Zurich bank contained in the Swiss police reports constitutes hearsay within hearsay. Melridge contends that the police reports and bank records were properly admitted under the exceptions to the hearsay rule for business records and public reports.

## ANALYSIS

The primary issue presented to the court is the admissibility of police and bank records from the Country of Switzerland that were obtained by Melridge from the offices of the United States Attorney. The United States Attorney received these records from officials of the Swiss government pursuant to a request made under the Treaty on Mutual Assistance in Criminal Matters. As the moving party, Melridge has the burden of proving that Heublein wilfully violated the temporary restraining order by clear and convincing evidence. *See, e.g., Matter of Battaglia*, 653 F.2d 419 (9th Cir.1981).

The Treaty on Mutual Assistance in Criminal Matters specifically provides, in Article 5, Section 3(a): "Nothing in this Treaty shall be deemed to prohibit govern- mental authorities in the requesting State from ... using the materials [produced] in any investigation or proceeding concerning the civil damages connected with an investigation or proceeding for which assistance has been granted."

Swiss authorities have determined that an American bankruptcy trustee is a governmental authority within the meaning of this article. *Bernstein v. IDT Corp.*, 638 F.Supp. 916, 920 (S.D.N.Y.1986). This case would fit within Article 5, Section 3(a) because Melridge, formerly a Chapter 11 debtor-in-possession, is now controlled by a Chapter 7 bankruptcy trustee, John Mitchell. *Id.*

■ The Treaty also provides, at Article 37:

The existence of restrictions in this Treaty shall not give rise to a right on the part of any person to take any action in the United States to suppress or exclude any evidence or to obtain other judicial relief in connection with requests under this Treaty, except with respect to [provisions not applicable here].

The court finds that Heublein lacks standing to assert violations of the Treaty. Therefore, it is not necessary for the court to determine whether use of the Swiss documents violates the Treaty.

■ Heublein challenges the admissibility of the Swiss documents on the grounds of lack of authentication and inadmissible hearsay. As to authentication, Melridge has the burden of making a *prima facie* showing to the court that the proffered documents are authentic. In making this showing, Melridge may rely on circumstantial evidence and need not present the testimony of the original custodian of records. *See, e.g., Alexander Dawson, Inc. v. NLRB*, 586 F.2d 1300, 1302 (9th Cir.1978); *see also Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*, 505 F.Supp. 1190, 1223 (E.D. Pa.1980). Under Fed.R.Evid. 901(a), the requirement of authentication as a precondition to admissibility "is satisfied by evidence to support a finding that the matter in question is what its proponent claims." In offering the Swiss documents, Melridge

relies on the testimony of Assistant United States Attorney (AUSA) Charles Stuckey, along with the documents themselves.

### 1. Swiss Police Reports

■ Melridge seeks to authenticate the Swiss police reports pursuant to Fed.R. Evid. 901, arguing that the illustrations in Rule 901(b)(1), (4) and (7) apply here. AUSA Stuckey testified that his office obtained the documents pursuant to a formal request to the Swiss government under the Treaty on Mutual Assistance in Criminal Matters, and that the AUSA's office received the Swiss documents in response to that request. AUSA Stuckey is therefore a witness with knowledge, and his testimony supports a finding that the police reports from Switzerland are what Melridge claims them to be. Fed.R.Evid. 901(a).

Melridge also contends that the police reports from the Country of Switzerland have "distinctive characteristics," as illustrated in Rule 901(b)(4), in that their "[a]ppearance, contents, substance, internal patterns ... taken in conjunction with circumstances" are sufficient to establish their authenticity.

Finally, Melridge points to the testimony of AUSA Stuckey as proof that the documents are from the public office where these documents would be expected to be kept, comparable to the illustration provided in Rule 901(b)(7) regarding public records or reports.

The testimony of AUSA Stuckey regarding the receipt of these documents by the Department of Justice in response to its formal Treaty request, together with their appearance, contents and the letters of transmittal included with the documents, establish strong circumstantial evidence sufficient to constitute a *prima facie* showing of the authenticity of these documents. Heublein has offered no evidence imputing the genuineness or authenticity of these police reports. *United States v. Smith*, 609 F.2d 1294, 1301 (9th Cir.1979) (sufficient circumstantial evidence allowed admission of documents without direct evidence as to their authenticity); *see also Zenith Radio Corp. v. Matsushita Elec.*

*Ind. Co.*, 505 F.Supp. at 1223 (citing *McCormick* for the proposition that "a *prima facie* showing is made by the emergence of a document from public custody").

■ Furthermore, the Swiss police reports are not barred on hearsay grounds. Fed.R.Evid. 803(8)(C) provides an exception to the hearsay rule for police reports in civil cases. The fact that the documents are foreign and not domestic does not affect their admissibility under this rule. *See, e.g., United States v. Grady*, 544 F.2d 598, 604 (2d Cir.1976) (admitting Irish police records); *Morgan Guar. Trust Co. v. Hellenic Lines Ltd.*, 621 F.Supp. 198, 217 (S.D.N.Y.1985) (admitting Greek public documents). The court finds that these police reports bear strong indicia of trustworthiness. Therefore, the burden is on Heublein to make an affirmative showing of untrustworthiness beyond the obvious fact that the declarant is not in court to testify. *See, e.g., Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 619 (8th Cir.1983). He has not done so.

The Swiss police reports refer to an interview of the director of the ABN responsible for Heublein's accounts. The Swiss police conclude in their reports that Heublein, along with another individual, received approximately $1.7 million in cash from the Lipworth Investments Inc. account when the account was closed on March 1, 1988. Heublein objects to this conclusion contending that this conclusion was based on an interview by the Swiss police with the director of the ABN. Heublein characterizes this as impermissible hearsay within hearsay.

Under Fed.R.Evid. 803(8)(C), "factual findings resulting from an investigation" are not excluded by the hearsay rule, unless "circumstances indicate lack of trustworthiness." The Swiss police report states, as translated, that "[c]ash payments went to Heublein and to Buchecker (Act. 122)." *See* Exhibit 3, Document No. 140012, and translation in Exhibit 4. This is a "factual finding resulting from an investigation," and the statement thus falls within the exception to the hearsay rule set forth in Rule 803(8)(C). *See Baker v. Elco-*

*na Homes Corp.*, 588 F.2d 551, 556–59 (6th Cir.1978), *cert. denied*, 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979) (factual finding made by officer was properly admitted under Rule 803(8) even though witnesses' inadmissible statement undoubtedly had a bearing on that finding). While Heublein bears the burden to show a lack of trustworthiness to this conclusion in the Swiss police report, he has made no attempt to offer such evidence.

### 2. *Swiss Bank Records*

Melridge seeks to authenticate the Swiss bank records through both Rule 901 and Rule 902(3). As with police reports, a *prima facie* showing sufficient for authenticating bank records can be made through circumstantial evidence. The testimony of AUSA Stuckey, the distinctive characteristics of these documents, their appearance, the place where they were found and from which they were provided to Melridge, and their contents are sufficient to support a finding that the documents are what Melridge claims them to be. *See United States v. Smith, supra.* In particular, the Swiss bank records correspond with evidence introduced by Melridge in earlier proceedings regarding the transfers of funds by Heublein out of the United States and into the ABN in Zurich.

■ The Swiss bank records fall within a clear exception to the hearsay rule. Under Rule 803(6), bank records are a record of regularly conducted activity created and maintained in the regular course of business as a regular practice of that business. The Swiss bank records are therefore admissible evidence. *See, e.g., United States v. Miller*, 830 F.2d 1073, 1077–78 (9th Cir. 1987); *see also In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 288–89 (3d Cir.1983).

### CONCLUSION

■ The Swiss police reports and bank records are admissible, probative evidence. The bank records alone establish Heublein's wilful and deliberate violation of the orders of the bankruptcy court dated December 14, 1987 and December 30, 1987.

The court finds that Heublein wilfully and deliberately violated these orders, and thus is in contempt of court.

Heublein conducted numerous transactions in the Lipworth Investments Inc. account during the time period in which, at his request, the preliminary injunction hearing had been postponed and while the temporary restraining orders were in effect. The following transactions violated the terms of the temporary restraining orders:

1. Cash withdrawals of $35,000 and $20,000 on January 29, 1988 and February 9, 1988, respectively. *See* Exhibit 3, Document Nos. 140037 and 140038.

2. Account debit of $100,000 on February 1, 1988, to "Banque Privee E. De." *See* Exhibit 3, Document Nos. 140040 and 140051.

3. Sales of negotiable securities held in the Lipworth Investments Inc. account during the months of December, 1987 through February, 1988, totalling over $1.9 million. *See* Exhibit 3, Document Nos. 140049–53.

4. Withdrawal of all remaining cash proceeds in the Lipworth Investments Inc. account in the amount of $1,787,802 on March 1, 1988. *See* Exhibit 3, Document No. 140036. This cash withdrawal came only one week after Judge Juba conducted a hearing on Melridge's motion for a preliminary injunction. At the conclusion of that hearing, Judge Juba stated that it was his "inclination" to grant Melridge's motion to require Heublein to return his foreign assets.

The above transactions were in violation of the temporary restraining orders entered by the bankruptcy court. Based on the above transactions, the court finds that Heublein sold, transferred or received funds and assets in violation of the temporary restraining orders in the amount of $1,942,802. Heublein's numerous violations of the temporary restraining orders set forth above were wilful and deliberate and constitute contempt of this court's orders.

Heublein's violations of the temporary restraining orders set forth above caused

injury to Melridge to the extent that assets subject to the temporary restraining orders and to which Melridge asserted an equitable claim were liquidated and secreted from Melridge.

The court will enter an order requiring Heublein to deposit $1,942,802, an amount equal to the amount of funds and assets Heublein sold, transferred or received in violation of the temporary restraining orders, into a trust account at First Interstate Bank, N.A., in Portland, Oregon, to be governed by further order of this court. Heublein will have sixty days from the date of this order to comply.