**Dean K. BUCKLEY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**System 99, Intervenor.**

**No. 24546.**

United States Court of Appeals, Ninth Circuit.

Oct. 5, 1970.

Rehearing Denied Nov. 24, 1970.

---

W. Urie Walsh (argued), San Francisco, Cal., for petitioner.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison & Allen H. Sachsel, Attys., N.L.R.B., Washington, D. C., Roy O. Hoffman, Director, N.L.R.B., Brundage, Neyhart, Grodin, & Beeson, San Francisco, Cal., for respondent.

Wesley J. Fastiff and George H. Tichy, II, of Littler, Mendelson & Fastiff, San Francisco, Cal., for intervenor.

Before KOELSCH and TRASK, Circuit Judges, and BYRNE, District Judge.*

BYRNE, District Judge:

Dean Buckley has petitioned this Court to review a decision by the N.L.R.B. dismissing unfair labor practice charges brought against both intervenor, System 99, and Line Drivers Local No. 468 of the International Brotherhood of Teamsters. Buckley's charges were dismissed on the grounds that the record before the Board was insufficient to support the Trial Examiner's conclusions that the Union caused System 99 to discriminatorily discharge Buckley because he was not a union member.

System 99 is a trucking company employing both local and long-distance "line" drivers. The collective bargaining agreement between the company and the union divides the line drivers into three categories. First, there are "regular bid drivers" who bid for particular trips. Second are the "extra board drivers" who receive jobs if there are runs remaining after the regular bid drivers have secured work. The third class encompasses "casual drivers". These men work only when there are more assignments than those which can be handled by both the regular bid drivers and the extra board drivers.

Unlike the other categories, casual drivers do not have seniority rights and are not permanent employees of the company. They also receive "termination notices" from the company after each trip. System 99 maintains a list of casual drivers whose names are obtained from the union hiring hall, referrals from other companies, and from personal application by the drivers themselves. Relative to the employment of casual workers, the company-union contract provides that

"When the employer needs additional men *he shall give the local union equal opportunity with other sources to provide suitable applicants,* but the employer shall not be required to hire those referred by the local union." (Emphasis supplied.)

Also, the contract has a union shop clause but no exclusive hiring hall provision.

Non-union member Buckley applied to System 99 for a casual driver job in early July 1967. Shortly thereafter, Don Gardner, dispatcher at the company's Emeryville terminal, arranged for Buckley to drive a truck load to Fresno. Later Buckley made three hauls to Redding on July 13 and 22, and on August 1.

After the August 1st trip, Gardner gave Buckley an application blank for permanent employment with the company. Gardner also told Buckley that he

---

* The Honorable William M. Byrne, United States Senior District Judge, Central District of California, sitting by designation.

would be called to work the following day.

On August 2nd union President Manny Joseph, having received a copy of Buckley's most recent termination slip, telephoned Joseph Tudisco, System's terminal manager, to discuss the "equal opportunity" provision. According to Buckley, Gardner told him on August 3rd that Manny Joseph had called and said that Buckley could no longer be employed at the company because he was not a member of the union. Don Armour, a fellow employee of Buckley, testified that Gardner told Buckley, in Armour's presence, that Buckley could not work unless he were a union member.

According to the company, casual drivers were not employed again until August 7. The company claims that after that date it twice attempted to hire Buckley as a driver but that he was not available for employment. In addition, Chris Sorenson, System's central line dispatcher and Gardner's superior, testified that Buckley told him that he, Buckley, had a permanent job with another company as a supervisor. Sorenson also stated that Buckley's name was then removed for the first time from the casual drivers list after Buckley's declaration.

While Buckley was employed with the other company (Clipper Carloading), System 99 received copies of tachograph charts [1] for two runs by Buckley. These records indicated that Buckley had exceeded the speed limit during the trips and that he had abused the trucks' engines.

After leaving the employ of Clipper Carloading, Buckley sent a telegram to System 99 advising the company that he was again available for work. On the same day, dispatcher Sorenson sent Buckley a letter telling him that his name had been added to the casual list. Although his name was on the list, the company never again hired Buckley as a driver. Due to the company's inaction, Buckley filed an unfair labor practices charge with the N.L.R.B. alleging that System had ceased employing him as a casual driver solely because he was not a member of the union.

Although petitioner Buckley has failed to set forth a statement of the issues presented for review,[2] we take the following as the issues in this case: (1) was there substantial evidence to support the Board's findings that the union did not violate section 8(b) (2) and (1) (A) of the Act by Manny Joseph's telephone conversation with Tudisco on August 2nd, and (2) was the Board's finding that System did not violate section 8(a) (3) of the Act by its failure to employ Buckley as a casual driver after August 1st supported by substantial evidence on the record as a whole.

As to the first issue, the trial examiner found that the collective bargaining agreement "gave the union the right to provide Interlines (System 99) with names of applicants for employment only" but that Manny Joseph

" * * * was not satisfied with furnishing only a list of names. He complained of having members out of work while Interlines (System 99) was employing nonmembers, namely Buckley and Dare. Tudisco testified that this was the purpose of Joseph's call."

The trial examiner also found that Manny Joseph appeared to "have spoken in a tone of voice which conveyed his purpose to require employment of members of Local 468 as casual drivers in preference to nonmembers" as an inference from Joseph's statement, "Don't tell me you aren't using any (nonmembers)",

---

1. A tachograph is a tachometer that records or registers its measurements. Relative speed can be determined from tachograph records.

2. Rule 28(a) (2) Federal Rules of Appellate Procedure.

and from his reference to Buckley and another non-union employee.

Lastly, the trial examiner concluded that

"* * * on a ratio of five members to two non-members Local 468 had no cause to complain of a contract which gave it the privilege only of an 'equal opportunity'. * * * The very fact that Joseph mentioned Buckley and Dare as nonmembers being used by Interlines is, in itself, indicative of the fact that he was taking the position that members should be given work in preference to nonmembers, for, if Joseph's sole purpose was merely to supply names of applicants, he could have done that without any mention at all of non-members who were working."

The Board's conclusions and findings were contrary to the examiner's:

"The record indicates that the list of applicants was not required by Tudisco until *after* Joseph complained of having members out of work. There is no evidence in the record that Joseph was requesting Tudisco to use union members to the exclusion of Buckley based on the testimony of Tudisco, to whom the call was made, and Business Agent Vercessi, who was in the union office when Joseph called Tudisco." (Board's emphasis.)

In addition, the Board held that

"Since * * * the trial examiner did not overhear the conversation between Joseph and Tudisco, we cannot rely on the tone of voice used by Joseph as a basis for finding that Joseph intended that union members be used to the exclusion of, or even in preference to, nonunion employees. Neither can we overlook the fact that the testimony of Tudisco in relating the events after the phone call, indicates otherwise. * * * The plain meaning of Joseph's words was that he wanted only the equal opportunity the concededly valid contract gave him.

That being so, we shall dismiss the complaint as to the union."

As to the charges against the company, the Board found that the trial examiner did not discredit Tudisco's testimony that System made two attempts to get Buckley on a casual driver job after the August 2nd phone conversation. The Board disagreed with the trial examiner's assessment that Tudisco's testimony was "too vague, because it is not clear that a specific job would have been offered. * * *" Instead, the Board held that "we see no purpose for calling an individual listed as a casual driver, at a time during which casual drivers are needed, other than to offer employment to the individual called."

Although this Court might be able to draw reasonable inferences at variance with the Board's conclusions, we are reminded that "the fact that the Board's choice is one of two conflicting alternatives and that evidence and inferences exist to support the rejected choice is not a sufficient ground" for disregarding the Board's decision. NLRB v. Holly Bra of California, Inc., 405 F.2d 870, 872 (CA 9 1969). In view of the evidence in the record and under the weight of *Holly Bra,* this Court holds that the Board drew a reasonable inference about the telephone conversation of August 2nd. We have no alternative but to affirm its decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). See also Radio Officers' Union of Commercial Telegraphers Union, A.F. of L. v. NLRB, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954); Corn Products Refining Co. v. FTC, 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320 (1954), and NLRB v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305 (1942).

As to the second issue, the Board's finding that the company did not actually discriminate against Buckley appears to be supported by the record.

Without disturbing the credibility determinations of its trial examiner, the

Board found that System 99 tried to employ Buckley at least twice after August 1st, and that the company did not employ Buckley after November 10, 1967, because tachograph records showed that Buckley was a high-speed driver.

In the case at bar, Buckley now contends that (1) his name was removed from the casual list because of Manny Joseph's phone call, and (2) Gardner's testimony that Buckley was not being called to work because he was not a member of the union should have been imputed to the company to establish unlawful motivation.

The Board relied on Tudisco's testimony that Buckley's name was not removed from the casual list as a direct result of the telephone call from Joseph. In contrast, Buckley has not cited testimonial or other evidence in the record to support the claim that his name was removed soon after Joseph's phone call.

Finally, Gardner's statement was received by the trial examiner subject to proof that Gardner was a supervisor. Nowhere in the transcript of record before this Court do we find such proof offered by Buckley. In the absence of extraordinary circumstances, Section 10(e) of the Act prevents review of matters not subject to exceptions before the trial examiner. NLRB v. Ochoa Fertilizer Corp., 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961); NLRB v. Jan Power, Inc., 421 F.2d 1058 (CA 1970). In any event, both the Board and the trial examiner held that there was "serious question" as to whether Gardner was a supervisor. In our view, the record appears to support the Board's finding that Gardner performed only clerical duties so that the Board's decision to place no reliance on his hearsay statements was justified.

Buckley's petition to set aside the Board's order is denied.