ALEXANDER DAWSON, INC., d/b/a
Alexander's Restaurant and
Lounge, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 77–1607.

United States Court of Appeals,
Ninth Circuit.

Sept. 28, 1978.

As Amended on Denial of Rehearing
Dec. 1, 1978.

Ronald G. Rickard (argued), of Meserve, Mumper & Hughes, Los Angeles, Cal., for petitioner.

Michael F. Messitte (argued), N.L.R.B., Washington, D. C., for respondent.

Before MERRILL, GOODWIN and TANG, Circuit Judges.

PER CURIAM:

Alexander Dawson, Inc. (the company), pursuant to section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f), petitioned for review of an order of the National Labor Relations Board which found that the company had violated section 8(a)(1) and 8(a)(3) of the Act, 29 U.S.C. § 158(a)(1) and (3). The Board cross-petitioned for enforcement. We find that the order is supported by substantial evidence and therefore dismiss the petition for review and grant the Board's petition for enforcement.

FACTS

In 1974 the company began construction of a restaurant and lounge in Las Vegas, Nevada. The company admittedly intended to operate the restaurant on a nonunion basis and so informed its management and supervisors. It realized that maintaining nonunion status could prove difficult because most such establishments in the Las Vegas area were organized and under contract with the Culinary Workers Union. The company consulted attorneys for advice as to how to maintain nonunion status and sent a representative to a conference on that topic. The company informed its supervisors of its desire to remain nonunion and emphasized its policy during the interviewing and hiring processes.

In June, 1975, the Culinary Workers Union Local 226 and the Bartender's Union Local 165 initiated organizational efforts and demanded recognition as representatives of the company's employees. In July, the Local Joint Executive Board of the unions filed an unfair labor practice charge with the Board alleging that the company had violated section 8(a)(1) and 8(a)(3) of the Act, 29 U.S.C. § 158(a)(1) and (3) by: (1) interrogating applicants for employment concerning their union sympathies and activities, (2) granting tip subsidies to employees to dissuade them from supporting the union, and (3) discriminating on the basis of union activities by refusing to hire applicants with prior union affiliation or activities.

The Administrative Law Judge (ALJ) found that the company had violated the Act by interrogating employees, granting tip subsidies to discourage union support and by refusing to hire eighteen applicants because they were union members or had previously worked in union establishments. He found the evidence insufficient to establish an unlawful refusal to hire as to three other applicants and no improper motive in the discharge of another employee. He found that the company had also ordered the surveillance of employee Louis Clery and his brother as a result of their union activities, but only considered this surveillance as background evidence of the company's unlawful motivation. The ALJ noted the absence of a specific allegation of a violation based on this surveillance and the failure of the General Counsel to amend the complaint regarding this matter.

The Board adopted the findings and conclusions of the ALJ as to the violations of the Act and agreed with his finding that the company had directed the surveillance of the Clery brothers because of their union activities. The Board, however, found these surveillance activities to be sufficient to justify the finding of an additional viola-

tion of section 8(a)(1), 29 U.S.C. § 158(a)(1), noting that this surveillance was part of the company's persistent antiunion campaign. It found that the question of the company's surveillance of the employees was fully litigated at the hearing before the ALJ. Under the order of the ALJ adopted by the Board, the company was required: (1) to cease and desist from interrogating employees, granting tip subsidies and refusing to hire applicants on the basis of their union sympathies, (2) to offer the specified applicants employment in the positions in which they would have been hired absent discrimination and to make them whole through back pay, and (3) to post the usual notices.

## I.

The company contends that it was error for the Board to find that it had unlawfully refused to hire applicants Dunkle, Hardson, Walters, Chandler, Mighell, Lewman and Russo, since the finding was based solely on what it argues were improperly admitted, unauthenticated job application forms. These applicants did not testify at the hearing but application forms completed in their names were admitted into evidence. The company contends that the record does not contain any evidence concerning the authorship of the applications and that in the absence of such evidence the writings are not authenticated and are therefore inadmissible.

The ALJ found the documents to be admissible under Rule 901(a) of the Federal Rules of Evidence, which states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." [1] The Board specifically agreed with the ALJ's finding of admissibility under Rule 901(a).

The issue for the trial judge under Rule 901 is whether there is prima facie evidence, circumstantial or direct, that the document is what it is purported to be. If so, the document is admissible in evidence. *See, e. g., United States v. Wilson,* 532 F.2d 641, 644–45 (8th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976); *United States v. Scully,* 546 F.2d 255, 269 (9th Cir. 1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1168, 50 L.Ed.2d 578 (1977), *Carbo v. United States,* 314 F.2d 718, 743 (9th Cir. 1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964). It then remains for the trier of facts to make its own determination of the authenticity of the admitted evidence and the weight which it feels the evidence should be given. Thus,

> "The scope of appellate review upon this issue is confined to determining whether the admission constituted abuse of judicial discretion in determining that a prima facie case has been made out."

*Carbo v. United States, supra,* 314 F.2d at 743. *Accord, United States v. Scully, supra,* 546 F.2d at 269.

The ALJ's finding was based on the similarity of the challenged applications to those filed by applicants who testified and authenticated their own applications. He also noted that the company did not present any evidence to contradict this prima facie evidence of authenticity and did not attempt to prove the applications were fraudulently prepared.

The company challenges this basis of authentication, which it terms "authentication by similarity of underlying form," urging there is no such concept. We disagree, based on our understanding of the ALJ's reasoning. The content of a document, when considered with the circumstances surrounding its discovery, is an adequate basis for a ruling admitting it into evidence. *United States v. Sutton,* 138 U.S.App.D.C. 208, 426 F.2d 1202, 1207 (1969).

While no witness could specifically testify as to the chain of custody of the seven applications in question (or, indeed, as to the chain of custody of any particular application), the testimony was that a num-

---

1. The Federal Rules of Evidence are applicable to Board proceedings "so far as practicable." 29 U.S.C. § 160(b).

ber of applications had (without authority) been taken from the company's premises by two if its employees and given to the union, who then gave them to the General Counsel for the Board. Eleven of the applications in this group were identified by the applicants. It was reasonable for the ALJ to conclude that since all the applications appeared to come from the same source and were on the same form, and since the majority were conceded to be authentic applications for employment, a prima facie case of authenticity was established as to the seven remaining documents. We conclude that the ALJ did not abuse his discretion in finding prima facie evidence of authenticity and did not err in admitting the applications into evidence.[2]

■ The company also contends that the evidence does not support the finding that the seven applicants discussed above, as well as applicant Jackson, were unlawfully denied employment. The company argues that even if the applications were sufficiently authenticated there is no proof that the applications for employment were perfected. The ALJ rejected this contention, finding "it is clear that in filing their applications and in participating in the interviews, they had done everything necessary to perfect an application for employment with Respondent." He also noted that the company considered the filing of an application to be a continuing request for employment which did not require further action on the part of the applicant. This finding is supported by substantial evidence concerning the application and employment process which the company did not rebut by presenting any conflicting evidence concerning the status of these applicants.

■ The company also argues that the Board erred in finding unlawful discrimination in the failure to hire applicants Jacobs, Fardoux, McKinnis, Wood, Frisk, Mighell and Walters, since these individuals applied only for positions as supervisors, not as employees, and therefore are not protected by the Act.

In its exceptions to the conclusions of the ALJ the company excepted only as to the findings concerning Mighell, Fardoux, Wood and Jacobs on the ground that they had applied for supervisory positions. The company failed to take exception to the findings of the ALJ as to applicants McKinnis, Frisk and Walters. It is precluded thereby from raising here the applicant status of these three since this issue was not put before the Board as required by section 10(e) of the Act, 29 U.S.C. § 160(e), and there are no extraordinary circumstances to excuse this failure. E. g., NLRB v. Selvin, 527 F.2d 1273, 1276–77 (9th Cir. 1975); Buckley v. NLRB, 432 F.2d 409, 413 (9th Cir. 1970), cert. denied, 401 U.S. 1002, 91 S.Ct. 1246, 28 L.Ed.2d 535 (1971); NLRB v. Jan Power, Inc., 421 F.2d 1058, 1061 (9th Cir. 1970).

■ The company argues that Mighell, Fardoux, Wood and Jacobs applied only for positions as executive chef or director of food and beverage, which it contends are supervisory positions. This issue, however, is far from clear. On the application form in the space labeled "job applied for" Mighell indicated "chef" and "food and beverage" and thus did not clearly limit his application to supervisory positions. Wood left open the "job applied for" space on his application blank, but testified that he was applying for the position of "working chef."[3] Jacobs' application indicated that

2. The ALJ did not misplace the burden of proof on the question of authenticity by noting that the company did not present evidence raising any question concerning the authorship of the applications. Once prima facie evidence of authenticity was presented the question of authenticity was before the finder of fact and it remained for the company to rebut the General Counsel's prima facie case.

3. We have discovered no evidence in the record concerning the supervisory status of the position termed "working chef," and have been referred to none by the parties. The only evidence concerning the duties of the working chef was testimony of Jacobs. No supervisory duties, as listed in 29 U.S.C. § 152(11), were mentioned in that testimony and we therefore assume for the purposes of this appeal that the working chef position is not supervisory.

he was applying for the position of executive chef, but he testified that he informed the company that he would accept employment as a working chef and stated that the executive chef position was not discussed in his interview. Fardoux's application listed only executive chef as the position applied for and he did not testify before the ALJ.

The ALJ found no evidence to establish that the company had a separate category for supervisory applicants seeking the position of executive chef. He also found that the company did not consider employees solely for those positions listed on their job applications, noting that the individual hired as the head chef had applied only for a position as "chef." He concluded:

"I find that the evidence is not sufficient to support the conclusion that the applicants who listed executive chef on their employment applications were seeking solely supervisory positions."

The positions these applicants sought were, for the most part, indefinite and the record supports the conclusion of the ALJ that the company did not limit its consideration of an applicant to the specific positions listed on the application. For these reasons we affirm the finding of the Board that the company unlawfully discriminated against these employees.

## II.

The company also charges that it was denied due process by the Board's finding of a violation of section 8(a)(1) based on unlawful surveillance of its employees. Unlawful surveillance was not charged in the complaint and the company contends that the issue was not fully litigated at the hearing.

This court has held that the Board may find an unfair labor practice when the issue has been fully and fairly litigated even though no specific charge was made in the original complaint. E. g., Free-Flow Packaging Corp. v. NLRB, 566 F.2d 1124, 1131 (9th Cir. 1978); NLRB v. Klaue, 523 F.2d 410, 415 (9th Cir. 1975); REA Trucking Co. v. NLRB, 439 F.2d 1065, 1066 (9th Cir. 1971). The Board may properly "render a decision based upon the issues actually tried * * *, or it could order amendment to conform to proof * * *." Frito Co. v. NLRB, 330 F.2d 458, 465 (9th Cir. 1964).

We find that the issue of surveillance was fully and fairly tried and that the Board did not err in finding this additional violation. As in Free-Flow Packaging Corp. v. NLRB, supra, the evidence concerning this unlawful practice was relevant to the question of antiunion animus and the ALJ received evidence on this issue as bearing on the question of the company's motivation. We agree with the Board's finding that the company had ample opportunity to offer, and did offer, evidence on this point, and hold that the company was not denied due process by the finding of a violation based on the unlawful surveillance.

The petition for review is dismissed and the cross-petition of the Board is granted and the order is enforced.