Arezou MANSOURIAN; Lauren Mancuso; Nancy Nien–Li Chiang; Christine Wing–Si Ng; and all those similarly situated, Plaintiffs,

v.

BOARD OF REGENTS OF the UNIVERSITY OF CALIFORNIA AT DAVIS; Lawrence Vanderhoef; Greg Warzecka; Pam Gill–Fisher; Robert Franks; and Lawrence Swanson, Defendants.

No. CIV. S 03–2591 FCD EFB.

United States District Court, E.D. California.

April 23, 2008.

Arezou Mansourian, Debra A. Smith, Noreen Ann Farrell, Equal Rights Advocates, James C. Sturdevant, Mark Thomas Johnson, Monique Olivier, Whitney Bryn Huston, The Sturdevant Law Firm A Professional Corporation, San Francisco, CA, Kristen Marie Galles, Equity Legal, Alexandria, VA, for Plaintiffs.

Nancy Joan Sheehan, George A. Acero, Michael William Pott, Porter Scott, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

FRANK C. DAMRELL, JR., District Judge.

This matter is before the court on a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, filed by defendants Board of Regents of the University of California, Davis, Lawrence Vanderhoef ("Vanderhoef"), Greg Warzecka ("Warzecka"), Pam Gill–Fisher ("Gill–Fisher"), and Lawrence Swanson ("Swanson") (collectively "defendants" or "UCD"). Plaintiffs Arezou Mansourian ("Mansourian"), Lauren Mancuso ("Mancuso"), and Christine Wing–Si Ng ("Ng") (collectively "plaintiffs")[1] oppose the motion. For the

---

1. Plaintiff Nancy Nien–Li Chiang voluntarily dismissed all claims in this action on June 12,

reasons set forth below,[2] defendants' motion is GRANTED.

## BACKGROUND [3]

In the 1990s, varsity wrestling at UCD included both women and men. (DRAF ¶ 53.) Plaintiffs Mansourian, Mancuso, and Ng are former female wrestlers at UCD. (DRAF ¶ 3.) In 2000, UCD ordered that all women be removed from the wrestling program. (DRAF ¶ 4.)

Subsequently, plaintiffs filed a number of complaints with the U.S. Department of Education's ("DOE") Office for Civil Rights ("OCR"). Plaintiff Ng filed the first complaint on April 25, 2001, alleging "[t]he Athletic Administration will not allow me to wrestle, nor any other female, and I strongly believe it is due to my sex." (PRUF ¶ 93; Defs.' Ex. GGG, filed Jan. 11, 2008, at W46.)[4] Plaintiff Ng filed a second supplemental complaint with the OCR on May 14, 2001, which included allegations that UCD "recruits 'student-athletes' for its wrestling program but prohibits such recruitment of females," "prohibits females from participating in regularly scheduled competition," "denies women wrestlers the use of the 'intercollegiate training room,'" and "denies women wrestlers the services of its athletic trainers." (PRUF ¶ 95; Defs.' Ex. HHH, filed Jan. 11, 2008, ¶¶ 1–4.) On June 26, 2001, plaintiff Ng submitted a third supplemental complaint on behalf of herself and plaintiffs Mansourian and Mancuso. (PRUF ¶ 96.) This complaint alleged the "UC–Davis athletic department granted the male members of the wrestling team the scholarships awarded by wrestling coach, Mike Burch in June 2001, but not to the females." (Defs.' Ex. KKK, filed Jan. 11, 2008, at W419.) Finally, plaintiff Mansourian filed a fourth supplemental complaint on August 13, 2001, alleging the "firing [of Mike Burch] was in retaliation against him and us, because he fought to keep us on UCD's intercollegiate

2007. (*See* Mem. & Order (Docket # 195), filed July 12, 2007.)

2. Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. L.R. 78–230(h).

3. Unless otherwise noted, the facts contained herein are undisputed. (*See* Pls.' Response to Defs.' Stmt. of Undisputed Facts ("PRUF"), filed Mar. 6, 2008.) Where the facts are disputed, the court recounts plaintiffs' version of the facts. (Defs.' Response to Pls.' Stmt. of Additional Disputed Facts ("DRAF"), filed Mar. 31, 2008.)

The court notes that both parties filed motions to strike and numerous objections, objecting to various aspects of evidence submitted in support of and in opposition to the motion for summary judgment. (*See* Pls.' Mot. to Strike (Docket # 320), filed Mar. 6, 2008; Pls.' Opp'n to Judicial Notice (Docket # 323), filed Mar. 6, 2008; Pls.' Objections to Evidence (Docket # 338), filed Mar. 6, 2008; Defs.' Objections to Evidence (Docket # 344), filed Mar. 31, 2008; Defs.' Mot. to Strike (Docket # 348), filed Mar. 31, 2008; Pls.' Objections to Evidence (Docket # 366), filed Apr. 17, 2008.) Except where otherwise noted herein, the court finds the parties' objections irrelevant to the motion, as the court does not rely upon the subject evidence in rendering its decision. As such, the parties' motions to strike are DENIED and the objections of both parties are OVERRULED as moot.

4. Plaintiffs object to defendants' Exhibit GGG as improperly authenticated and hearsay. (*See* Pls.' Objections to Evidence at 39:6–8 (Docket # 338), filed Mar. 6, 2008.) However, because plaintiffs also submitted this evidence, (Pls.' Ex. A:80 (Docket # 330–2), filed Mar. 6, 2008), it is self-authenticating, *Orr v. Bank of Am.*, 285 F.3d 764, 777 n. 20 (9th Cir.2002); *Alexander Dawson, Inc. v. N.L.R.B.*, 586 F.2d 1300, 1302 (9th Cir.1978). Moreover, the court considers the evidence not for the truth of the matters asserted, but rather for the effect they had on UCD (i.e. notice). *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir.1991). Plaintiffs' objection is overruled.

wrestling team." (Defs.' Ex. LLL, filed Jan. 11, 2008, at W417.)

Following an investigation by the OCR, UCD posed and the OCR accepted a voluntary resolution plan. (DRAF ¶ 82.) The plan required UCD to permit female athletes to try out for the wrestling team. (DRAF ¶ 83.) Plaintiffs Ng and Mancuso subsequently competed for a spot on the wrestling team, but neither plaintiff was given a spot on the team. (DRAF ¶ 93.)

On December 18, 2003, plaintiffs filed the instant action on behalf of themselves and a putative class, asserting six claims for relief: (1) violation of Title IX based on unequal opportunities; (2) violation of Title IX based on unequal financial assistance; (3) retaliation in violation of Title IX; (4) violation of 42 U.S.C. § 1983; (5) violation of the California Unruh Civil Rights Act; and (6) violation of public policy. Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 5, 2004. (Defs.' Mot. to Dismiss (Docket # 13–15), filed Mar. 5, 2004.) The court denied the motion on May 6, 2004. (Mem. & Order (Docket # 25), filed May 6, 2004).

Unfortunately, both defendants' and plaintiffs' counsel suffered illnesses throughout the course of the litigation. As a result, both parties stipulated to extend deadlines and to stay proceedings. In August 2006, plaintiffs obtained new counsel. (Notice of Appearance (Docket # 134), filed Aug. 18, 2006.) The parties submitted a joint status report on January 19, 2007, and active litigation resumed. (Joint Status Report (Docket # 154), filed Jan. 19, 2007.)

On February 2, 2007, plaintiffs' filed a motion to amend the complaint to add new plaintiffs and allegations. (Pls.' Mot. to Amend (Docket # 158), filed Feb. 2, 2007.) The court denied the motion on March 20, 2007.[5] (Mem. & Order (Docket # 175), 2007 WL 841739, filed Mar. 20, 2007.) The parties thereafter stipulated to dismiss the class claims. (Mem. & Order (Docket # 195), 2007 WL 1722975, filed June 12, 2007.)

On June 5, 2007, defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Defs.' Mot. for J. on Pleadings (Docket # 188), filed June 5, 2007.) The court granted the motion for all claims, except plaintiffs' claim for ineffective accommodation. (Mem. & Order (Docket # 226), 2007 WL 3046034, filed Oct. 18, 2007.) Defendants' filed the instant motion on January 11, 2008. (Defs.' Mot. for Summ. J. (Docket # 280), filed Jan. 11, 2008.)

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment where "the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. Proc. 56(c); *see California v. Campbell*, 138 F.3d 772, 780 (9th Cir.1998). The evidence must be viewed in the light most favorable to the nonmoving

---

5. Specifically, the court denied plaintiffs' request to amend the complaint to assert claims for denied opportunities in women's rugby and field hockey. The court found that "[w]hile the plaintiffs may has sought to bring challenges on behalf of all women athletes at UC Davis ... [t]he factual allegations in the original complaint related only to the opportunities available for women to participate in the UC Davis wrestling program and plaintiffs alleged inability to receive the benefits of being a varsity wrestler." (Mem. & Order at 11:13–20 (Docket # 175), filed Mar. 20, 2007.)

party. *See Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102–03 (9th Cir.2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir.1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *See Nissan Fire & Marine,* 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set for specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e).

## ANALYSIS

Defendants assert that plaintiffs' ineffective accommodation claim must fail because plaintiffs have not alleged they gave defendant notice and an opportunity to remedy any purported systemic non-compliance with Title IX. Defendants' argument presents an issue of first impression in this jurisdiction. The court concludes that money damages cannot be awarded unless a plaintiff has given notice of and an opportunity to rectify the specific violation alleged by a Title IX plaintiff. The court also concludes that plaintiffs have failed to demonstrate a triable issue of fact regarding whether such notice and opportunity were given in this case.

### A. Notice and Opportunity to Cure in Title IX Cases

Title IX prohibits sex discrimination in education programs, including athletic programs, at institutions receiving federal funding. 20 U.S.C. § 1681 (West 2008). Although the statute is silent on the question of private remedies, the Supreme Court has held that Title IX provides individuals with a private cause of action. *Cannon v. Univ. of Chi.,* 441 U.S. 677, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). However, because a private cause of action is judicially implied, a court must "shape a sensible remedial scheme that best comports with the statute." *Id.*

The express system of enforcement in Title IX provides a robust administrative remedial scheme. *Bruneau v. S. Kortright Ctr. Sch. Dist.,* 163 F.3d 749, 756 (2d Cir.1998). Under the enforcement scheme, injured persons can file a complaint with the DOE, which is required to investigate the allegations. 34 C.F.R. § 100.7(b)-(c); *Bruneau,* 163 F.3d at 756. The DOE is also permitted to conduct periodic compliance reviews without a complaint. 34 C.F.R. § 100.7(a). If the DOE concludes based on its investigation of a complaint or a periodic review that an institution has violated Title IX, it may terminate federal funding to the institution or institute other proceedings authorized by law. 20 U.S.C. § 1682. Significantly, the DOE may not initiate any enforcement proceedings until it "has advised the appropriate person or persons of the failure

to comply with the requirement and has determined that compliance cannot be secured by voluntary means." *Id.* Similarly, the administrative regulations require resolution of compliance issues "by informal means wherever possible," *id.* § 100.7(d)(1), and prohibit enforcement proceedings absent a showing the aid recipient "has been notified of its failure to comply and of the action to be taken to effect compliance," *id.* § 100.8(d).[6] Thus, both the statute and its implementing regulations condition enforcement proceedings on notice and an opportunity to cure noncompliance.

■ "A central purpose of requiring notice of the violation ... and an opportunity for voluntary compliance before administrative enforcement proceedings can commence is to avoid diverting education funding from beneficial uses where a recipient was unaware of discrimination in its programs and is willing to institute prompt corrective measures." *Gebser v. Lago Vista Ind. Sch. Dist.,* 524 U.S. 274, 289, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). When an institution's athletic program is out of compliance with Title IX, knowledge of the violation cannot be imputed to the institution simply because it oversees the program. *Grandson v. Univ. of Minn.,* 272 F.3d 568, 575 (8th Cir.2001). Even if knowledge of failure to provide full and effective accommodation of interest could be imputed, an institution may otherwise be in compliance with Title IX because (1) there is substantial statistical proportionality between athletic participation and enrollment rates of an underrepresented sex; or (2) the institution has a continuing practice of program expansion to accommodate an underrepresented sex. *Neal v. Bd. of Trustees of Cal. St. Univs.,* 198 F.3d 763,

767–68 (9th Cir.1999) (listing three ways in which an institution may comply with Title IX: (1) full and effective accommodation interest; (2) substantial statistical proportionality between participation and enrollment; or (3) continuing practice of program expansion). Thus, failure to provide notice prior to filing suit may result in the type of harm the notice requirement is intended to prevent, that is, a court order diverting education funds where an institution is unaware of the violation and willing to take corrective measures.

■ Moreover, "[i]t would be unsound ... for a statute's *express* system of enforcement to require notice to the recipient and an opportunity to come into voluntary compliance while a judicially *implied* system of enforcement permits substantial liability without regard to the recipient's knowledge or its corrective actions upon receiving notice." *Gebser,* 524 U.S. at 289–90, 118 S.Ct. 1989 (emphasis in original). This is particularly true given that Congress has conditioned the statute's most severe sanction—termination of federal funding—upon notice and an opportunity for voluntary compliance. 20 U.S.C. § 1682; 34 C.F.R. §§ 100.7(d)(1), 100.8(d). The court does not find that Congress intended to create an implied enforcement scheme that may impose greater liability, in the form of monetary damages potentially exceeding the level of federal funding, absent comparable conditions. *Gebser,* 524 U.S. at 290, 118 S.Ct. 1989. "Because the express remedial scheme under Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation ... [the court] conclude[s], in absence of further direction from Congress, that the implied damages remedy

---

6. The court notes that the cited regulations pertain to Title VI of the Civil Rights Act of 1964. However, the implementing regulations of Title IX expressly incorporate by reference these provisions. *See* 34 C.F.R. § 106.71.

should be fashioned along the same lines." *Id.*

In similar circumstances, the Eighth Circuit has also held that notice and an opportunity to cure alleged violations of Title IX are required to sustain a private damages action. *Grandson,* 272 F.3d at 575–76. In *Grandson,* female student athletes filed actions for monetary relief claiming a funding disparity between the men's and women's soccer teams and ineffective accommodation. *Id.* Relying on *Gebser,* the Eighth Circuit upheld the district court's grant of summary judgment to the University of Minnesota because "[t]here was no allegation of prior notice of [plaintiffs'] complaints to appropriate UMD officials, no allegation of deliberate indifference by such officials, and no allegation [plaintiffs] afforded UMD a reasonable opportunity to rectify the alleged violations." *Id.* Because defendants in this case also seek summary judgment on the basis plaintiffs failed to provide notice and an opportunity to cure an ineffective accommodation claim, *Grandson* provides persuasive support for the court's conclusion that notice and an opportunity to cure are required to sustain a private damages action.

In asserting that notice is not required because plaintiffs are asserting a claim for ineffective accommodation, plaintiffs argue the court's reliance on *Gebser* is misplaced. Specifically, plaintiffs contend the Supreme Court's holding in *Gebser* is limited to cases of sexual harassment because, in such cases, the institution may not be aware of the alleged violation. Plaintiffs contend an institution necessarily has knowledge of an ineffective accommodation violation because it oversees the athletic program. Thus, plaintiffs assert they may seek damages without giving notice to the institution and an opportunity to cure. However, the *Gebser* Court's reasoning applies equally to both sexual harassment and ineffective accommodation claims. The Supreme Court in *Gebser* was concerned about creating a judicially implied remedial system that was broader than the express enforcement scheme created by Congress, particularly where damages may exceed a recipient's level of federal funding. 524 U.S. at 289–90, 118 S.Ct. 1989. The Court therefore required that the remedial scheme for private plaintiffs mirror the remedial scheme mandated for federal enforcement agencies. *Id.* If the court adopted plaintiffs' position, it would create an implied enforcement scheme with the potential to impose greater liability on an institution without conditions comparable to the express remedial scheme provided by Congress. *See id.* The Supreme Court's analysis in *Gebser* is therefore equally applicable to this case.

Moreover, there is nothing in the statute or its implementing regulations to support the argument that Congress intended a different remedial scheme to apply based on the nature of the Title IX claim. Section 902 broadly advises that no remedial actions shall be taken by a federal enforcement agency until it "has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means." 20 U.S.C. § 1682. Similarly, the regulations instruct agencies to resolve matters "by informal means wherever possible" and abstain from taking action until "the responsible Department official has determined that compliance cannot be secured by voluntary means [and] the recipient or other person has been notified of its failure to comply and of the action to be taken to effect compliance." 34 C.F.R. §§ 100.7(d)(1), 100.8(d). Notably absent from these provisions is language limiting their application to sexual harassment claims. The court will not infer an intent on the part of

Congress to create an implied scheme differentiating between sexual harassment and ineffective accommodation claims where the express scheme contains no such distinction.

Plaintiffs argue that under *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005), notice is not required where an institution intentionally violates Title IX. However, *Davis* and *Jackson* implicitly support the conclusion that notice and an opportunity to cure specific violations are prerequisites for private damages claims under Title IX. In *Davis*, the Supreme Court held that an institution can be liable for student-to-student sexual harassment where it exhibited "deliberate indifference *to known* acts of harassment." 526 U.S. at 643, 119 S.Ct. 1661 (emphasis added). In that case, the complaint alleged that the defendants had knowledge of the alleged violation because plaintiff or her mother reported each of the incidents to the classroom teacher, another classroom teacher, and the school principle over several months. *Id.* at 634–35, 119 S.Ct. 1661. Further, the institution had an opportunity to cure the violation over several months after such notice was given, but it deliberately failed to take action. *Id.* at 635, 644, 119 S.Ct. 1661. Rather, it was only after more than three months of reported harassment, that plaintiff was allowed to change her classroom seat so that she no longer sat next to petitioner. As such, the Supreme Court's holding in *Davis* supports the holding that notice and an opportunity to cure is required.

Similarly, in *Jackson*, the Court held an institution is liable for retaliation against a coach that complains of sex discrimination. 544 U.S. at 183, 125 S.Ct. 1497. In that case, the complaint alleged that the defendant had knowledge of the alleged violation because the plaintiff basketball coach complained to his supervisors about the unequal treatment of the girls' basketball team at the institution. *Id.* at 171, 125 S.Ct. 1497. The plaintiff's complaints went unanswered. *Id.* at 171, 125 S.Ct. 1497. Subsequently, instead of addressing the complaints or curing the alleged violations, the defendant allegedly retaliated against the plaintiff by giving him negative work evaluation and, ultimately, removing him from his position as the girls' basketball coach. *Id.* at 172, 125 S.Ct. 1497. Thus, in *Jackson*, the defendant had an opportunity to cure the alleged violations, but chose to take retaliatory action instead. Therefore, like *Davis*, the Court's holding in *Jackson* supports, rather than refutes, the court's holding that notice and an opportunity to cure are required in Title IX cases.

Finally, plaintiffs contend that any reliance on *Grandson* is misplaced because "it stands alone in applying *Gebser* to a claim of intentional discrimination." (Pls.' Opp'n to Defs.' Mot. for Summ. J. (Docket # 342), filed Mar. 6, 2008, at 37). However, plaintiffs fail to recognize that there are less than two dozen reported Title IX cases, and *Grandson* is the only reported case to address the specific issue of notice and opportunity to cure presented by this case. While *Grandson* is not controlling on this court, it is persuasive authority for addressing whether notice and an opportunity to rectify specific violations of Title IX are required to sustain a private damages action.

## B. Notice and Opportunity to Cure in this Case

Having concluded notice and an opportunity to cure specific violations alleged by Title IX plaintiffs are required to sustain a

private damages action, the court considers whether plaintiffs have raised a triable issue of fact as to notice and opportunity to cure in this case. Alleged violations of Title IX are generally divided into two categories of claims: unequal treatment claims and ineffective accommodation claims. Unequal treatment claims focus on, *inter alia,* inequalities of scholarships, coaches' salaries, facilities, training, and travel between male and female athletic programs. *See* 34 C.F.R. § 106.37(c), 106.41(c)(2)-(10); *Pederson v. La. State Univ.,* 213 F.3d 858, 865 n. 4 (5th Cir. 2000). Ineffective accommodation claims determine whether equal athletic opportunities for members of both sexes are available and effectively accommodate the interest and abilities of members of both sexes. *See* 34 C.F.R. § 106.41(c)(1); *Pederson,* 213 F.3d at 865 n. 4.

■ The undisputed evidence establishes that plaintiffs did not provide defendants with notice and an opportunity to cure a violation of Title IX for ineffective accommodation. Plaintiffs' complaints filed with the OCR provide no indication of a claim for a failure to provide sufficient athletic opportunities for women. Plaintiff Ng's complaints allege unequal treatment in recruiting, scholarships, competitive schedules, facilities, and services at UCD. (Defs.' Ex. HHH ¶¶ 1–4; Defs.' Ex. KKK at W419.) Similarly, plaintiff Mansourian's complaint alleges "ongoing sexual discrimination" and asks for "equal rights, as women, so that we can again wrestle on UCD's intercollegiate wrestling team." (Defs.' Ex. LLL at W417.) Thus, the complaints do not indicate that plaintiffs were challenging UCD's entire athletic program.[7] Rather, the complaints allege specific acts of unequal treatment with respect to women's wrestling.[8] Plaintiffs complaints therefore fail to raise a triable issue of fact as to whether defendants received notice and an opportunity to cure an ineffective accommodation claim.

Plaintiffs argue they are not required to file a complaint with the OCR to satisfy notice and opportunity to cure. The court agrees. Indeed, plaintiffs could have satisfied these requirements in any number of ways. However, the only evidence of potential notice, beyond the complaints filed with the OCR, is a meeting that occurred in January 2001 between defendant Warzecka and plaintiffs Mansourian and Ng. (DRAF ¶ 70.) The deposition testimony of Mansourian and Ng indicates the parties

---

7. Plaintiffs argue that UCD was given adequate notice of an ineffective accommodation claim with respect to the wrestling team and, thereby, was given notice of a challenge to the athletic program. Assuming *arguendo* a challenge to a single team would notify an institution of a challenge to its entire athletic program, plaintiffs' proffered evidence does not support their assertion. Plaintiffs' complaints to defendants and the OCR do not set forth an ineffective accommodation claim with respect to either wrestling or UCD's entire athletic program. Rather, plaintiffs' complaints allege unequal treatment of female wrestlers.

8. In its Memorandum and Order addressing defendants' motion for judgment on the pleadings, the court construed that plaintiffs' allegation that UCD violated Title IX by "choosing to make fewer athletic opportunities to female students than to male students" as sufficient to state a claim for ineffective accommodation. (Mem. & Order at 23:2–7 (Docket # 226), filed Oct. 18, 2007 (citing Pls.' Compl. ¶ 129 (Docket # 1), filed Dec. 18, 2007.)) However, it was not clear until oral argument on defendants' motion that plaintiffs were pressing such a claim. As such, in keeping with the spirit of liberal notice pleading, the court allowed the parties to submit supplemental briefing on this issue due to the failure to incorporate such arguments with any type of specificity or particularity in the moving papers. In this supplemental briefing, defendants argued they were not aware plaintiffs were pressing this theory of liability. (*See* Defs.' Reply to Pls.' Supplement Br. at 1:12–18 (Docket # 212), filed Aug. 17, 2007.)

discussed why women were removed from the wrestling team. Specifically, Mansourian and Ng assert the parties discussed that women wrestlers were "way too much liability for the UC," that female wrestlers could not waive liability, that the NCAA does not support mixed wrestling teams, and that women interested in wrestling needed to "do the club sports." (*See* Pls.' Ex. B:33 at 189–199 (Docket # 334), filed Mar. 6, 2008; Pls.' Ex. B:38 at 173–76 (Docket # 335), filed Mar. 6, 2008.) Thus, the evidence fails to establish plaintiffs notified defendants of a complaint for ineffective accommodation during the meeting with Warzecka. Accordingly, plaintiffs have not raised a triable issue of fact as to whether they otherwise provided UCD notice and an opportunity to cure.

Plaintiffs also assert that requiring notice of specific violations of Title IX imposes an unprecedented burden on plaintiffs to allege violations with a high degree of specificity in OCR complaints. Plaintiffs contend that requiring potential litigants to distinguish between an unequal treatment claim and an ineffective accommodation claim is a burden not contemplated by the statute or even required by the pleading standard set forth in the Federal Rules of Civil Procedure. Contrary to plaintiffs' assertion, the court's holding does not require Title IX plaintiffs to plead their allegations with precision or specificity. However, the allegations must provide some indication of the basis for the institution's non-compliance so that an institution may attempt to remedy the situation voluntari-

ly. The evidence simply fails to establish that plaintiffs gave defendants notice of a Title IX claim for failing to provide enough athletic opportunities to female athletes.

In the alternative, plaintiffs contend that even if they did not provide notice of an ineffective accommodation claim, defendants should have been on notice that plaintiffs were making such a claim because the OCR actively investigated program-wide non-compliance with Title IX as a result of plaintiffs' complaints.[9] However, the evidence proffered by plaintiffs fails to support this assertion. Moreover, even if the OCR conducted an investigation into alleged program-wide violations, plaintiffs fail to present evidence that defendants were on notice of any program-wide violation as a result.

First, plaintiffs cite to the deposition testimony of Swanson, which they allege demonstrates that "the majority of the [OCR investigation] was spent on the issue of women's opportunities." (Pls.' Ex. B:55 at 104:19–20 (Docket # 336), filed Mar. 6, 2008.) The deposition testimony does not support this assertion. Swanson's testimony establishes that the OCR investigated the issue of women's athletic opportunities *in wrestling*:

> I think that the meeting was much more directed to the opportunity for women on the team, what had taken place in the past, what we were willing to do from this point forward. Concerns that had we really discriminated against these women, had we taken away the opportu-

---

**9.** Plaintiffs implicitly argue that if defendants knew of the alleged ineffective accommodation violation, the absence of any complaints directed at this specific type of violation by plaintiffs is immaterial. The court notes that this argument neglects the requirement that defendants be given an opportunity to cure the violations alleged by an aggrieved party. However, because, as set forth *infra*, plaintiffs

have not presented evidence that the OCR actively investigated a complaint of program-wide violations, that defendants were aware the OCR was conducting such an investigation, or that defendants were informed by the OCR that there were any such violations, the court need not reach the merits of this argument.

nity to be involved as they had been in the past.

(Pls.' Ex. B:55 at 104:1–8.) Swanson's testimony does not establish that the OCR investigated the athletic program's compliance with Title IX. Therefore, plaintiffs have not raised a triable issue of fact as to notice and opportunity to cure based on this testimony.

Second, plaintiffs cite a letter from a UCD official in support of their contention that the OCR investigated program-wide compliance with Title IX. The letter opens, "[UCD] welcome[s] the opportunity to have the [ OCR] review [UCD's] athletic gender equity compliance with Title IX." (Pls.' Ex. A:35 (Docket # 335), filed Mar. 6, 2008.) This statement is merely an introductory paragraph containing a basic salutation to the OCR, not a concession that UCD was aware of a claim for ineffective accommodation. In fact, the very next paragraph of the letter begins, "I would like to take this opportunity to respond to the sexual discrimination complaint filed by three UC Davis female students who participate with our NCAA Division I men's wrestling team." (Pls. Ex. A:35 ¶ 2.) Thus, the letter indicates the OCR investigated discrete acts of discrimination with respect to women's wrestling. Plaintiffs therefore have not raised a genuine issue of material fact on the basis of this letter.

Third, plaintiffs argue the deposition testimony of Warzecka establishes that the OCR investigated the amount of athletic opportunities UCD provided all female athletes. In his deposition, Warzecka was asked whether the OCR investigated all Title IX issues at UCD or merely the issues surrounding women's wrestling. (Pls.' Ex. B:65 at 368:24–369:1 (Docket # 337), filed Mar. 6, 2008.) Warzecka responded:

> [The OCR] responded to a complaint that the four women made. And did their—did they take latitude to look at other things outside of that complaint? Yes, they did.... And I feel a lot of the questions they asked helped them provide background of how we do things at UC Davis and how we handle club sports.

(Pls.' Ex. B:65 at 369:2–12.) While Warzecka's response indicates the OCR asked questions about matters outside the complaints, it does not establish the OCR investigated program-wide compliance with Title IX. Rather, Warzecka indicates he understood such questions to provide necessary background information. Because Warzecka's testimony does not establish the OCR investigated program-wide compliance or that UCD understood the OCR was conducting such an investigation, plaintiffs have failed to raise a triable issue of fact with respect to actual notice and opportunity to cure.

Plaintiffs' assertion that the OCR investigated program-wide compliance also fails because the voluntary resolution plan adopted by the OCR following its investigation made no findings with respect to program-wide violations. Instead, the plan dealt exclusively with women's wrestling. Specifically, the plan required UCD, *inter alia,* to encourage all men and women "to compete for a position on the wrestling team," to "recruit the best qualified wrestlers, irrespective of gender," to allow members of the club wrestling team to practice concurrently with members of the varsity wrestling team, to provide the club wrestling team medical insurance service and use of facilities equal to other university club sports, and to encourage members of the club wrestling team to participate in the open wrestling tourna-

ment sponsored by UCD. (Pls.' Ex. A:34 at 2 (Docket # 327–5), filed Mar. 6, 2008.) [10] The OCR found that by taking these steps, a "rapid resolution of the issues" could be reached. (Pls.' Ex. A:34 at 1.) The plan's limited subject matter and finding that issues could be resolved through action directed solely at the wrestling team indicates that no investigation was taken into UCD's program-wide compliance. At the very least, it indicates that UCD was not on notice of any program-wide violation as a result of the OCR's investigation. Thus, there is no evidence to support the assertion that the OCR investigated anything other than the unequal treatment of female wrestlers at UCD.

Finally, plaintiffs contend that UCD was on notice of an ineffective accommodation claim due to the public outcry in response to removal of females from the wrestling team. However, "[a] vigorous public debate on these issues does not demonstrate that [the university] knew of systemic non-compliance." *Grandson*, 272 F.3d at 575. The evidence submitted by plaintiffs demonstrates that the public outcry in this case was in response to the allegedly gender biased and discriminatory removal of women from the wrestling team. None of the evidence relating to the public's response contains allegations or statements relating to program-wide compliance or the failure of UCD to sufficiently provide athletic opportunities to women.[11] Accord-

ingly, the cited evidence is not sufficient to raise a triable issue of fact as to notice and opportunity to cure.

The court is mindful that Congress enacted Title IX to prevent the use of federal resources to support sex-based discrimination. 20 U.S.C. § 1681; *Cannon*, 441 U.S. at 704, 99 S.Ct. 1946. There is no question that student athletes are discriminated against and suffer harm when subject to unequal treatment or ineffective accommodation on the basis of their sex. However, the limited issue presented by the facts of this case on this motion is whether an institution may be held liable for damages for a claim of ineffective accommodation, absent a showing of notice by plaintiffs and an opportunity for defendants to rectify the alleged non-compliance. Given Title IX's express enforcement scheme, the Supreme Court's analysis in *Gebser*, and the Eighth Circuit's opinion in *Grandson*, the court concludes a suit for private damages cannot be sustained until notice and opportunity to cure are given to an institution allegedly out of compliance with Title IX. Plaintiffs have failed to demonstrate a triable issue of fact regarding whether such notice and opportunity were given in this case.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANT-

---

10. Plaintiffs object to defendants' request for judicial notice of the cited evidence. (*See* Pls.' Opp'n to Judicial Notice (Docket # 323), filed Mar. 6, 2008.) The court overrules this objection as plaintiffs also submitted the very evidence to which it objects.

11. Defendants' object to various letters, flyers, newspaper articles, and other evidence of the public's outcry following the removal of women from the wrestling team as hearsay. (*See*

Defs.' Objections to Evidence ¶¶ 1–10 (Docket # 344), filed Mar. 31, 2008.) However, the court does not consider the subject evidence for the truth of the matter asserted, but rather for the effect it had on UCD (i.e. notice). *Payne*, 944 F.2d at 1472. Moreover, consideration of this evidence does not prejudice defendants as it is not sufficient to raise a triable issue of fact as to notice. Defendants' objection is overruled.

ED. The Clerk is directed to close the file.

IT IS SO ORDERED.